UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILMER GIOVANI VALLE CASTRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 25-03713 (PLF) |
| | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
| | ) |
| Defendants. | ) |

<u>OPINION</u>

This case is before the Court on the defendants' Motion to Dismiss [Dkt. No. 4].[1]

Plaintiff Wilmer Giovani Valle Castro brings numerous claims against the District of Columbia

(the "District"), and Captain McHauley Murphy and Officer Victor Slopac of the Metropolitan

Police Department (the "MPD") (the "MPD officers" or the "officers"), arising out of

Mr. Castro's arrest following an incident on the night of April 23, 2022.  <u>See</u> FAC.  Mr. Castro

initiated this suit in the Superior Court of the District of Columbia in May 2023.  <u>See</u> Compl.  In

October 2025, after more than two years of litigation, the case was removed to this Court.  <u>See</u>

Notice.  The defendants now move to dismiss this suit in its entirety.  <u>See</u> MTD.  Upon careful

---

[1]     The documents considered by the Court in connection with this motion include:
Notice of Removal ("Notice") [Dkt. No. 1]; Complaint ("Compl.") [Dkt. No. 1-3 at 3-11];
Opposed Motion for Leave to File an Amended Complaint & Extension of Time to Serve Newly
Proposed Defendants ("Mot. for Leave") [Dkt. No. 1-7 at 16-19]; Plaintiffs' First Amended
Complaint ("FAC") [Dkt. No. 1-8 at 63-69]; Defendants' Motion to Dismiss [Dkt. No. 4];
Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("MTD")
[Dkt. No. 4-1]; Order dated May 20, 2024, D.C. Superior Court ("2024 Order") [Dkt. No. 4-2];
Plaintiff's Amended Opposition ("Opp.") [Dkt. No. 10]; Order dated September 11, 2025 ("2025
Order" [Dkt. No. 10-2]; and Defendants' Reply ("Reply") [Dkt. No. 11].

consideration of the record as a whole and the relevant authorities, the Court will grant the defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from Mr. Castro's amended complaint. See FAC. On the evening of April 23, 2022, Mr. Castro was lured into an apartment unit by unknown individuals and held against his will, and he "was beaten, robbed and tortured for details relating to his credit and debit card information." Id. ¶¶ 5-6. To escape the attack, Mr. Castro jumped out of a window and was severely injured when he landed. Id. ¶ 6. Onlookers discovered him, and officers from the MPD—including Captain Murphy and Officer Slopac—arrived at the scene sometime thereafter. Id. ¶¶ 7, 44-48.[2] When the MPD officers arrived, Mr. Castro was "bloodied, kneeling in the yard, moaning in pain." Id. ¶ 46. Captain Murphy did not interview Mr. Castro at the scene, instead receiving a "brief synopsis" from another officer that Mr. Castro "had jumped or fallen out of the window." Id. Captain Murphy did, however, interview one of Mr. Castro's alleged attackers, a man named Tyrese Washington. Id. During that interview, Mr. Washington told Captain Murphy that Mr. Castro "had choked [him] with a window." Id. Officer Slopac interviewed Mr. Castro and, based on information obtained during that interview, Slopac suggested to Captain Murphy that Mr. Washington "was the aggressor" in the altercation that preceded. Id. Captain Murphy decided to charge both Mr. Castro and Mr. Washington with a crime against the other. Id.

---

[2]     Mr. Castro's amended complaint refers to "Lieutenant McHauley Murphy," see FAC at 5, whereas the defendants' motion to dismiss refers to "Captain McHauley Murphy," see MTD at 1. The Court will defer to the defendants on this point and refer to "Captain Murphy" throughout this Opinion.

Mr. Castro and Mr. Washington were both transported to Howard University Hospital for treatment.  FAC ¶¶ 8, 45.  Once there, Mr. Castro was arrested and charged with aggravated assault.  Id. ¶¶ 8, 10.  Shortly after arriving at the hospital with Mr. Castro and Mr. Washington, the MPD officers learned that Mr. Washington had undisclosed, outstanding bench warrants in the District of Columbia and Maryland and had given a false name during his original interview.  Id. ¶ 45.

Mr. Castro was held at the hospital for about two weeks, until roughly May 7, 2022, when the charges against him were "no papered."  FAC ¶ 8.[3]  During that time, Mr. Castro did not understand why he had been arrested and was being held.  Id. ¶ 9.  He was prevented from speaking to friends or family, causing him to endure several painful surgeries and recover from his injuries alone.  Id. ¶¶ 9, 13.  He also was prevented from consulting with legal counsel.  Id. ¶ 9.  Furthermore, the MPD officers did not attempt to interview him in Spanish—his native language—or provide him with translation services.  Id. ¶¶ 12, 13.  In addition, Mr. Castro alleges that the MPD failed to investigate his abduction, which allowed his alleged attackers to pass his checks and commit other financial crimes against him.  Id. ¶ 14.

### B. Procedural History

Mr. Castro initiated this lawsuit against the District of Columbia, the MPD, and unknown officers of the MPD in Superior Court on May 6, 2023.  See Compl.  In his initial complaint, Mr. Castro asserted claims against the District for assault, battery, false arrest, false imprisonment, negligence, and gross negligence, and he pressed claims against the unknown

---

[3]    "In the parlance of the Superior Court, when a prosecutor decides not to proceed on a charge on which a person has been arrested, the charge is said to be 'no-papered,' i.e., dismissed."  District of Columbia v. Houston, 842 A.2d 667, 669 n.1 (D.C. 2004).

MPD officers for intentional infliction of emotional distress ("IIED") and constitutional violations.  See id. ¶¶ 14-45.  Superior Court Judge Ebony M. Scott granted the District's motion to dismiss in part, dismissing the claims for negligence and gross negligence, and dismissing the MPD as a defendant.  See 2024 Order.

The remaining parties proceeded to discovery, during which Mr. Castro sought leave to amend his complaint to identify Captain Murphy, Officer Slopac, and another MPD officer, as well as to add new constitutional claims.  See Mot. for Leave.  Judge Scott granted Mr. Castro's motion in part, granting him leave to amend to identify Captain Murphy and Officer Slopac and to add Fourth Amendment claims against them in their individual capacities. See 2025 Order.  Mr. Castro filed his amended complaint on September 15, 2025.  See FAC. Captain Murphy and Officer Slopac—with the District's consent—then removed the case to this Court on October 20, 2025.  See Notice.

On October 27, 2025, the defendants moved to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See MTD.  Mr. Castro filed an amended opposition on January 2, 2026, see Opp., and the defendants filed a reply on January 16, 2026, see Reply.  The defendants' motion is now ripe for decision.

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see Ashcroft v. Iqbal, 556 U.S. at 678.  The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting the plaintiff "the benefit of all inferences that can [reasonably] be derived from the facts alleged," Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original).  The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint."  Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see Ashcroft v. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555); see also Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

5

III. DISCUSSION

*A. Fourth Amendment Claims (Count Six)*

The Court will begin with Mr. Castro's Fourth Amendment claims against Captain Murphy and Officer Slopac pursuant to 42 U.S.C. § 1983. See FAC ¶¶ 40-51. As an initial matter, the Court notes that in Count Six, Mr. Castro presses Fourth Amendment claims against the MPD officers in both their individual and official capacities. See id. at 5. The defendants correctly point out, however, that Judge Scott's opinion and order granted Mr. Castro leave to proceed against the MPD officers in their individual capacities only. See 2025 Order at 12, 14; MTD at 9-10. The Court therefore will dismiss Mr. Castro's claims against the MPD officers in their official capacities and consider only whether he has stated claims against them in their personal capacities.

1. Issue Preclusion and Law of the Case Doctrine

Mr. Castro contends that the defendants are barred from moving to dismiss his Fourth Amendment claims against the MPD officers because the "viability" of those claims was "fully litigated and decided in the D.C. Superior Court." Opp. at 5. Mr. Castro bases that contention on the fact that Judge Scott granted his motion for leave to amend his complaint after determining that such amendment would not be futile. See id. at 6. He equates this grant of leave to amend with a holding that his amended complaint has "stated plausible constitutional . . . violations." Id. Mr. Castro suggests that two similar but distinct doctrines might apply here: issue preclusion and the law of the case doctrine. See id. at 5-7.

Under the doctrine of issue preclusion, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action . . . whether on the same or a

6

different claim." Amador County v. Salazar, 640 F.3d 373, 384 (D.C. Cir. 2011) (alteration in original) (quoting Restatement (Second) of Judgments § 27 (A.L.I. 1982)). "Issue preclusion means that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'" Aenergy, S.A. v. Republic of Angola, 123 F.4th 1351, 1356 (D.C. Cir. 2024) (quoting B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 147 (2015)). The law of the case doctrine, on the other hand, "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Pepper v. United States, 562 U.S. 476, 506 (2011) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)); see also Wye Oak Tech., Inc. v. Republic of Iraq, 24 F.4th 686, 697 (D.C. Cir. 2022) ("Colloquially speaking, the [law of the case] doctrine ensures that 'the same issue presented a second time in the same case in the same court should lead to the same result.'" (quoting Kimberlin v. Quinlan, 199 F.3d 496, 500 (D.C. Cir. 1999))). That doctrine is similar to issue preclusion "in that it limits relitigation of an issue once it has been decided." Rezzonico v. H & R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999). Law of the case, however, "is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation," whereas issue preclusion "does not speak to direct attacks in the same case." Id.; see also Overseas Shipholding Grp., Inc. v. Skinner, 767 F. Supp. 287, 296 (D.D.C. 1991) ("[I]t is hornbook law that the law of the case doctrine operates as a form of issue preclusion within the same case.").

Preliminarily, the defendants argue that neither issue preclusion nor the law of the case doctrine applies here because the question before this Court—whether Mr. Castro has stated plausible Fourth Amendment claims against the MPD officers under Rule 12(b)(6)—was not actually decided by the Superior Court. Reply at 3-4. The defendants contend that the Superior

Court instead granted Mr. Castro leave to file his proposed constitutional claims under the

different—and more forgiving—standard of Rule 15(a) of the Superior Court Civil Rules, which

mirrors Rule 15(a) of the Federal Rules of Civil Procedure.  See id.; compare SUPER. CT. CIV.

R. 15(a), with FED. R. CIV. P. 15(a).  Pursuant to Rule 15(a), "[t]he court should freely give leave

[to amend] when justice so requires." SUPER. CT. CIV. R. 15(a)(3).  At the same time, however,

the defendants acknowledge that the Superior Court granted Mr. Castro leave to amend after

determining that such amendment would not be futile.  See Reply at 4; 2025 Order at 13.  "The

standard for deciding whether to deny leave due to futility is . . . 'for practical purposes . . .

identical to [the standard governing] a Rule 12(b)(6)' motion to dismiss." Williams v.

Ellerbe, 317 F. Supp. 3d 144, 147 (D.D.C. 2018) (first alteration added) (quoting In re Interbank

Funding Corp. Sec. Litig., 629 F.3d at 215-16); see also Zajac v. Finnegan, Henderson, Farabow,

Garrett & Dunner LLP, 346 A.3d 693, 702 (D.C. 2025) ("[A] denial of leave to amend on the

basis of futility necessarily implicates a review of whether the claims would survive a motion to

dismiss . . . .").  Indeed, the Superior Court's holding that amendment would not be futile rested

explicitly on its conclusion that Mr. Castro had alleged sufficient facts to state Fourth

Amendment claims against the MPD officers in their individual capacities.   See 2025 Order

at 13.  For present purposes, then, the Court will consider the Superior Court to have determined

that Mr. Castro's constitutional claims against the officers would survive a Rule 12(b)(6) motion

to dismiss.[4]

---

[4]        The defendants contend that they did not raise, and the Superior Court did not
consider, either whether the MPD officers had probable cause to detain Mr. Castro or whether
the officers were entitled to qualified immunity. See Reply at 5.  That is a baffling contention,
given that the Superior Court devoted several pages of its opinion to those very issues. See 2025
Order at 12-15; see, e.g., id. at 12 ("The District argues that the doctrine of qualified immunity
shields these Defendants from personal liability because the Amended Complaint fails to show

Notwithstanding that consideration, however, the Court is not persuaded that either issue preclusion or the law of the case doctrine prevents it from considering afresh whether Mr. Castro has stated constitutional claims against Captain Murphy and Officer Slopac. Issue preclusion does not apply here because this matter is not a "second suit" to the case in the Superior Court but rather is a continuation of that same case. Aenergy, S.A. v. Republic of Angola, 123 F.4th at 1356 (quoting B&B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. at 147); see Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 436 (1974) ("After removal, the federal court 'takes the case up where the State Court left it off.'" (quoting Duncan v. Gegan, 101 U.S. 810, 812 (1880))). What is more, neither issue preclusion nor the law of the case doctrine applies to an interlocutory order, which "can always be reconsidered and modified by a district court prior to entry of a final judgment." Keepseagle v. Perdue, 856 F.3d 1039, 1048 (D.C. Cir. 2017) (quoting First Union Nat'l Bank v. Pictet Overseas Tr. Corp., 477 F.3d 616, 620 (8th Cir. 2007)); see Organic Consumers Ass'n v. Hain Celestial Grp., Inc., 285 F. Supp. 3d 100, 106 n.6 (D.D.C. 2018) (concluding that issue preclusion did not apply with respect to "an interlocutory order," which "is by definition not a final judgment"). The Superior Court's "order granting [the] motion to amend . . . is of course interlocutory." Schoen v. Wash. Post, 246 F.2d 670, 673 n.5 (D.C. Cir. 1957); accord United States ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 493 (3d Cir. 2017). "Strictly speaking" then, because a grant of leave to amend "is an interlocutory order that remains open for reconsideration," this Court is not barred from reconsidering whether Mr. Castro's amended complaint states Fourth Amendment claims against the MPD officers.

---

that either Officer violated Plaintiff's Fourth Amendment right and that the violated right was 'clearly established' at the time of the violation.").

Bowrin v. District of Columbia, Civil Action No. 23-2421 (BAH), 2023 WL 9000494, at *6 (D.D.C. Dec. 28, 2023).

The Court acknowledges that at least one judge in this district has invoked the law of the case doctrine to follow a "prior interlocutory order[]" entered by a state court "prior to removal." Bowrin v. District of Columbia, 2023 WL 9000494, at *6. Even in that case, though, the judge acknowledged that the Superior Court's decision was "not binding." Id. The judge nonetheless chose to defer to that decision, which was on "a question of state law," to ensure "consistency" between the dispositions of motions to dismiss filed by two different co-defendants—"a compelling reason to conform with the Superior Court's conclusion." Id. Mr. Castro has not argued that any such compelling reason exists here, and the Court discerns none. Accordingly, the Court will decline to constrain itself based on the Superior Court's ruling and instead will independently consider whether Mr. Castro's constitutional claims survive the defendants' motion to dismiss.

### 2. Qualified Immunity

Turning to the merits, the defendants argue that Mr. Castro's Fourth Amendment claims against Captain Murphy and Officer Slopac should be dismissed because the doctrine of qualified immunity shields the officers from liability. See MTD at 7-8. "An official sued under Section 1983 is entitled to qualified immunity unless it is shown that the official [1] violated a statutory or constitutional right [2] that was clearly established at the time of the challenged conduct." Vasquez v. District of Columbia, 110 F.4th 282, 288 (D.C. Cir. 2024) (citation modified). The Court can address the two steps of the qualified immunity inquiry in either order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Mr. Castro argues that the MPD officers violated his constitutional rights by arresting and then continuing to detain him without probable cause, in contravention of the Fourth Amendment.  See Opp. at 7-10.  The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no [w]arrants shall issue, but upon probable cause."  U.S. CONST. amend. IV.  A warrantless arrest "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  Lane v. District of Columbia, 211 F. Supp. 3d 150, 163 (D.D.C. 2016) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)).  "Probable cause 'is a practical, non-technical conception' that considers 'the facts and circumstances within [the officers'] knowledge and [about] which they had reasonably trustworthy information."  Id. (alterations in original) (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).  "The existence of probable cause depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest and is based on the totality of the circumstances."  Lin v. District of Columbia ("Lin"), 47 F.4th 828, 839 (D.C. Cir. 2022) (citation modified).

The D.C. Circuit has recognized as a "corollary of the rule that probable cause requires a totality-of-the-circumstances analysis" that "new facts can negate probable cause."  Lin, 47 F.4th at 841 (citation modified).  "As a result, a person 'must be released from arrest[] if previously established probable cause has dissipated.'"  Lin, 47 F.4th at 841 (alteration in original) (quoting United States v. Lopez, 482 F.3d 1067, 1073 (9th Cir. 2007)); see Asinor v. District of Columbia, 111 F.4th 1249, 1256 (D.C. Cir. 2024) ("[T]he Fourth Amendment requires officers to release an arrestee from custody—that is, to end their seizure of a person—if new facts dissipate the probable cause that justified a warrantless arrest.").  An officer "may not

11

disregard facts tending to dissipate probable cause." United States v. Lopez, 482 F.3d at 1073 (quoting United States v. Ortiz-Hernandez, 427 F.3d 567, 574 (9th Cir. 2005)).

There is, in the Court's view, a compelling argument that even if the MPD officers initially had probable cause to arrest Mr. Castro, the facts alleged could give rise to a showing that the probable cause dissipated during his continued detention such that he should have been released. The D.C. Circuit has explained that "it is enough for probable cause that the police officer received his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth." Lin, 47 F.4th at 841 (citation modified). Key to that explanation is that "eyewitness allegations" must be "'reasonably trustworthy' and thus probable cause does not exist where 'there is an apparent reason for the officer to believe that the eyewitness was lying.'" Wesley v. Campbell, 779 F.3d 421, 429-30 (6th Cir. 2015) (quoting Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999)). Considered together with the D.C. Circuit's instructions in Lin, that explanation suggests that probable cause underlying a warrantless arrest may dissipate if new facts emerge indicating that the eyewitness is not reasonably trustworthy. Mr. Castro's complaint thus could state a claim for a Fourth Amendment violation so long as he has alleged facts allowing an inference that some "apparent reason to question [Mr. Washington's] reliability" arose after Mr. Castro had been arrested that the MPD officers disregarded. Id. (quoting Logsdon v. Hains, 492 F.3d 334, 343 (6th Cir. 2007)).

According to the allegations in the amended complaint, which the Court must accept as true, Captain Murphy and Officer Slopac's decision to arrest Mr. Castro was based entirely on Mr. Washington's claim that Mr. Castro had "choked [him] with a window." FAC ¶ 46. Shortly after the arrest occurred, the MPD officers learned that Mr. Washington had given

12

the officers a false name during his interview—presumably, the same interview during which he accused Mr. Castro of attacking him.  See id. ¶¶ 45-46.  That alleged discovery plausibly would have caused a reasonable officer to doubt Mr. Washington's honesty and would have brought into question whether his concurrent claim against Mr. Castro was true.  That is particularly relevant here because Mr. Washington's accusation "had been the sole source of the initial probable cause to arrest" Mr. Castro.  Lin, 47 F.4th at 842.  At the very least, this "crack[] in the officers' probable cause . . . would have warranted a more probing inquiry."  Id. at 841.  But based on the amended complaint, it appears that the officers did nothing with the new information, instead continuing to detain Mr. Castro for weeks without so much as attempting to interview him further or in his native language.  FAC ¶¶ 8-9, 12-13.  It follows that these allegations could be sufficient to overcome the first hurdle to defeat an invocation of qualified immunity, at least at this early stage of the litigation.  See Lin, 47 F.4th at 841 (concluding that information discovered after a warrantless arrest that "uniformly discredited" a complaining witness "creates a genuine issue of material fact as to whether there was probable cause to keep [the defendant] under arrest").

Regardless of whether Mr. Castro can make out a constitutional claim, however, he is not entitled to relief against Captain Murphy and Officer Slopac because he has not overcome the second hurdle—that is, he has not shown that the constitutional right at issue was clearly established at the time of the alleged incident.  "[A] right will be held to have been clearly established at the time of an alleged violation if it would have been 'clear to a reasonable officer that his conduct was unlawful in the situation that he confronted.'"  Dukore v. District of Columbia, 799 F.3d 1137, 1144 (D.C. Cir. 2015) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  "Ordinarily," the law is clearly established if there is "a Supreme Court or Circuit

13

decision" on the issue or if "the clearly established weight of authority from other courts . . . ha[s] found the law to be as the plaintiff maintains."  Doe v. District of Columbia, 796 F.3d 96, 104 (D.C. Cir. 2015) (quoting Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)). "There need not be 'a case directly on point' for the right to be clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate' at the time the alleged violation occurred."  Lane v. District of Columbia, 211 F. Supp. 3d at 162 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  "A plaintiff seeking to overcome a claim of qualified immunity bears the burden of showing that the constitutional right that the officers allegedly violated was clearly established at the relevant time."  Id.

Mr. Castro argues that the MPD officers are not entitled to qualified immunity because "[i]t is well settled that an arrest without probable cause violates the [F]ourth [A]mendment" and that "[n]ew facts can 'negate probable cause.'"  Opp. at 11 (second and third alterations in original) (first quoting Martin v. Malhoyt, 830 F.2d 237, 262 (D.C. Cir. 1987); and then quoting United States v. Spencer, 530 F.3d 1003, 1008 (D.C. Cir. 2008)).  While those legal propositions are accurate, the Supreme Court repeatedly has admonished "that 'clearly established law' should not be defined 'at a high level of generality.'"  White v. Pauly, 580 U.S. 73, 79 (2017) (quoting Ashcroft v. al–Kidd, 563 U.S. at 742).  Instead, the Court has said that "the clearly established law must be 'particularized' to the facts of the case."  Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  Under Supreme Court precedent, to overcome the MPD officers' claim of qualified immunity, Mr. Castro must "identify a case where an officer acting under similar circumstances as [the MPD officers] was held to have violated the Fourth Amendment."  Id.

14

Mr. Castro seems to suggest that <u>Lin</u> is that analogous case.  <u>See</u> Opp. at 14.  In <u>Lin</u>, as noted above, the D.C. Circuit held that "a person 'must be released from arrest[] if previously established probable cause has dissipated.'"  <u>Lin</u>, 47 F.4th at 841 (alteration in original) (quoting <u>United States v. Lopez</u>, 482 F.3d at 1073).  The officers' probable cause for the warrantless arrest of the defendant in that case was based solely upon information furnished by the putative victim on the scene, and the officers later learned information that discredited the putative victim's version of events.  <u>See id</u>. at 841-42.  The D.C. Circuit determined that there was a genuine question as to whether the later-learned information dissipated probable cause for the initial arrest such that the continued detention of the defendant amounted to a constitutional violation.  <u>See id</u>. at 841.[5]

To defeat a claim of qualified immunity, however, the constitutional right at issue must "have been clearly established <u>at the time of an alleged violation</u>."  <u>Dukore v. District of Columbia</u>, 799 F.3d at 1144 (emphasis added).  Judicial decisions "that postdate the conduct in question . . . could not have given fair notice to" the officer claiming qualified immunity and thus "are of no use in the clearly established inquiry."  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 200 n.4 (2004); <u>accord</u> <u>Plumhoff v. Rickard</u>, 572 U.S. 765, 779 (2014).  <u>Lin</u> was decided in September 2022—several months <u>after</u> the alleged incident occurred.  <u>See</u> <u>Lin</u>, 47 F.4th at 828; FAC ¶ 5.  That decision therefore could not have provided Captain Murphy and Officer Slopac with notice that their conduct potentially violated the Fourth Amendment, meaning it is "of no use in the clearly established inquiry" here.  <u>Brosseau v. Haugen</u>, 543 U.S. at 200 n.4.

---

[5]    Judge Scott evidently also viewed <u>Lin</u> as clearly establishing the constitutional right at issue here, citing that case in her decision granting Mr. Castro leave to amend his complaint to add Fourth Amendment individual capacity claims against Captain Murphy and Officer Slopac.  <u>See</u> 2025 Order at 14.

15

Mr. Castro points to no other case from the Supreme Court or the D.C. Circuit in which a court found a constitutional violation in relevantly similar circumstances—that is, where information came to light after a warrantless arrest that called into question the complaining witness's version of events and on which the officers failed to act.[6]  Accordingly, the Court must conclude under existing qualified immunity doctrine that Mr. Castro has not met his burden to establish that Captain Murphy and Officer Slopac are not entitled to qualified immunity as a matter of law.

The Court notes that in the past several years, a number of federal judges have written compelling criticisms of the doctrine of qualified immunity.  See, e.g., Zadeh v. Robinson, 928 F.3d 457, 480 (5th Cir. 2019) (Willett, J., concurring in part) (observing that "there is a growing, cross-ideological chorus of jurists and scholars urging recalibration of contemporary immunity jurisprudence" (footnotes omitted)); McKinney v. City of Middletown, 49 F.4th 730, 756 (2d Cir. 2022) (Calabresi, J., dissenting) (collecting cases) ("As scholars have made clear, and more and more judges have come to recognize, qualified immunity cannot withstand scrutiny."); Jamison v. McClendon, 476 F. Supp. 3d 386, 418-424 (S.D. Miss. 2020).  Particularly in view of recent Supreme Court and D.C. Circuit decisions, there is no doubt that "qualified immunity jurisprudence is due for a major overhaul."  Briscoe v. City of Seattle, 483 F. Supp. 3d 999, 1008 (W.D. Wash. 2020); see also Jamison v.

---

[6]    In a similar case decided prior to Lin, Judge Mehta observed that "courts have not often considered 'dissipation in the context of new information emerging after a warrantless arrest based on probable cause.'"  Vasquez v. County of Will, Civil Action No. 17-02194 (APM), 2021 WL 4476766, at *7 (D.D.C. Sep. 30, 2021) (quoting United States v. Pabon, 871 F.3d 164, 175-76 (2d Cir. 2017)), aff'd sub nom. Vasquez v. District of Columbia, 110 F.4th 282 (D.C. Cir. 2024); see also id. ("[T]he Supreme Court has never indicated that the police have a specific Fourth Amendment obligation in the aftermath of a warrantless arrest continually to reevaluate whether the available evidence still definitively supports the initial probable cause determination." (quoting United States v. Pabon, 871 F.3d at 176)).  Based on that dearth of caselaw, Judge Mehta concluded—and the D.C. Circuit affirmed—that the officers were entitled to qualified immunity.  See id.; Vasquez v. District of Columbia, 110 F.4th at 288.

16

McClendon, 476 F. Supp. 3d at 423 ("Just as the Supreme Court swept away the mistaken doctrine of 'separate but equal,' so too should it eliminate the doctrine of qualified immunity."). Until the Supreme Court takes that much-needed action, however, this Court is bound to apply the law governing qualified immunity as it now stands. So constrained, the Court must dismiss the claims against the MPD officers.

### B. Common Law Claims (Counts One Through Five)

In addition to his Fourth Amendment claims, Mr. Castro presses common law claims of assault, battery, IIED, false arrest, and false imprisonment against the District. See FAC ¶¶ 20-39. The Court lacks original jurisdiction over those claims, so it must decide whether to exercise supplemental jurisdiction. Mr. Castro urges the Court to decline to exercise such supplemental jurisdiction should the Court dismiss his constitutional claims. See Opp. at 17-18.

The supplemental jurisdiction statute provides that this Court may, in its discretion, decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[C]ourts in this jurisdiction routinely decline to exercise supplemental jurisdiction over pendent common law claims after dismissing the [Section] 1983 claims over which they possess original jurisdiction." Buie v. District of Columbia, Civil Action No. 16-1920 (CKK), 2021 WL 4061142, at *21 (D.D.C. Sep. 7, 2021) (collecting cases); see United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Mr. Castro has failed to state a federal claim, and the Court will not exercise supplemental jurisdiction over his common law claims.

17

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the defendants's Motion to Dismiss [Dkt. No. 4].  An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 7/29/26